Christopher L. Rudd (SBN 130713)
E-mail: clrudd@ruddlawla.com
S. Martin Keleti (SBN 144208)
E-mail: s.martin.keleti@gmail.com
**THE RUDD LAW FIRM**
4650 Sepulveda Boulevard, Suite 205
Sherman Oaks, CA 91403
Telephone: (310) 457-4072

Danielle L. Perry (SBN 292120)
E-mail: dperry@masonllp.com
**MASON LIETZ & KLINGER LLP**
5101 Wisconsin Avenue NW, Suite 305
Washington, DC 20016
Telephone: (202) 429-2290
Facsimile: (202) 429-2294

*Counsel for Plaintiff and the Putative Class*

[additional counsel listed on last page]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN PATRICK, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>RUNNING WAREHOUSE, LLC, a California limited liability company; WILDERNESS SPORTS, LLC, a California limited liability company doing business as TACKLE WAREHOUSE; SPORTS WAREHOUSE a California corporation doing business as TENNIS WAREHOUSE; and SKATE WAREHOUSE, LLC, California limited liability company,<br><br>        Defendants. | Case No.: 2:21-cv-9978<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>**1. NEGLIGENCE;**<br>**2. BREACH OF IMPLIED CONTRACT;**<br>**3. QUASICONTRACT**<br><br>**DEMAND FOR JURY TRIAL** |

1

1   Plaintiff John Patrick ("Plaintiff"), individually and on behalf of himself and
2   all other persons similarly situated, brings this Class Action Complaint against
3   Running Warehouse, LLC, Wilderness Sports Warehouse, LLC, Sports
4   Warehouse, and Skate Warehouse, LLC (collectively, "Defendants"), and alleges,
5   upon personal knowledge as to his own actions and his counsel's investigation, and
6   upon information and belief as to all other matters, as follows:

7   ## JURISDICTION

8   1.   This Court has subject matter jurisdiction over this action pursuant to
9   28 U.S.C. § 1332(d) because this is a class action wherein the amount of
10  controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs,
11  there are more than 100 members in the proposed class, and at least one member of
12  the class is a citizen of a state different from Defendants. Moreover, this Court has
13  subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1)
14  because Plaintiff is a Pennsylvania citizen and therefore diverse from Defendants,
15  none of whom are citizens of Pennsylvania.

16  2.   This Court has personal jurisdiction over Defendants because
17  Defendants have systematic and continuous contacts with the State of California
18  through their websites, and because their headquarters are located in California.

19  ## VENUE

20  3.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a
21  Defendants reside within this judicial district and because a substantial part of the
22  events giving rise to the claims alleged herein occurred within this judicial district.

23  ## PARTIES

24  4.   Plaintiff John Patrick ("Plaintiff") is a citizen of Pennsylvania residing
25  in Fayette County, Pennsylvania.

26  5.   Defendant Running Warehouse, LLC ("Running"), is a limited
27  liability company organized and existing under the laws of the State of California,
28  with its principal place of business in San Luis Obispo, California. Running's

CLASS ACTION COMPLAINT

internet domain name is runningwarehouse.com and its website address is www.runningwarehouse.com.

6.     Defendant Wilderness Sports Warehouse, LLC ("Tackle") is a limited liability company organized and existing under the laws of the State of California, with its principal place of business in San Luis Obispo, California. Tackle's internet domain name is tacklewarehouse.com and its website address is www.tacklewarehouse.com. Although Tackle's website contains a copyright notice with Tackle Warehouse, LLC as the copyright claimant, such a business entity does not apparently exist, however, Tackle is the registrant of the service mark TACKLE WAREHOUSE, United States Patent and Trademark Office, Principal Register, Registration No. 3,173,191.

7.     Defendant Sports Warehouse ("Tennis") is a California corporation with its principal place of business in San Luis Obispo, California. Tennis' internet domain name is tennis-warehouse.com and its website address is www.tennis-warehouse.com.Although Tennis' website contains a copyright notice with Tennis Warehouse as the copyright claimant, such a business entity does not apparently exist, however, Tennis is the registrant of the service mark TENNIS WAREHOUSE, United States Patent and Trademark Office, Principal Register, Registration No. 3,132,128.

8.     Defendant Skate Warehouse, LLC ("Skate") is a limited liability company organized and existing under the laws of the State of California, with its principal place of business in San Luis Obispo, California. Skate's internet domain name is skatewarehouse.com and its website address is www.skatewarehouse.com.

9.     Although Running, Tackle, Tennis, and Skate are separate entities, they apparently are interrelated. For example, they all share an address and agent for service of process. They have members and managers (in the case of limited liability companies Running, Tackle, and Skate) and officers (in the case of corporation Tennis) in common. Running's home page contains links to Tackle,

CLASS ACTION COMPLAINT

Tennis, and Skate (among others) under the rubric "VISIT OTHER SPORTS WAREHOUSE WEBSITES." While the internet domain names for Running, Tackle, Tennis, and Skate are as alleged above, their contact e-mail address for privacy policy matters is identical: privacy@warehousesports.com.

## NATURE OF THE ACTION

10.    This is a data breach class action brought on behalf of consumers whose sensitive personal information was stolen by cybercriminals in a massive cyber-attack at Defendants in or around October 2021 (the "Data Breach"). The Data Breach reportedly involved collectively at least 1,813,224 consumers of Defendants.

11.    Information stolen in the Data Breach included individuals' sensitive information, including full names, addresses, payment card account numbers, card expiration dates, and card verification codes. (collectively the "PII").

12.    As a result of the Data Breach, Plaintiff and Class Members suffered ascertainable losses in the form of loss of the value of their private and confidential information, loss of the benefit of their contractual bargain, out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the attack.

13.    Plaintiff's and Class Members' sensitive personal information—which was entrusted to Defendants, their officials, and agents—was compromised, unlawfully accessed, and stolen due to the Data Breach.

14.    Plaintiff brings this class action lawsuit on behalf of those similarly situated to address Defendants' inadequate safeguarding of Plaintiff's and Class Members' PII that Defendants collected and maintained.

15.    Defendants maintained the PII in a reckless manner. In particular, the PII was maintained on Defendants' computer network in a condition vulnerable to cyberattacks of this type.

16.    Upon information and belief, the mechanism of the cyber-attack and

4

potential for improper disclosure of Plaintiff's and Class Members' PII was a known and foreseeable risk to Defendants, and Defendants were on notice that failing to take steps necessary to secure the PII from those risks left that property in a dangerous condition.

17.    In addition, Defendants and their employees failed to properly monitor the computer network and systems that housed Plaintiff's and the Class Members' PII. Had Defendants properly monitored their property, they would have discovered the intrusion sooner.

18.    Because of the Data Breach, Plaintiff and Class Members suffered injury and damages in the form of theft and misuse of their PII.

19.    In addition, Plaintiff's and Class Members' identities are now at risk because of Defendants' negligent conduct since the PII that Defendants collected and maintained is now in the hands of data thieves.

20.    As a further result of the Data Breach, Plaintiff and Class Members have been exposed to a substantial and present risk of fraud and identity theft. Plaintiff and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft.

21.    Plaintiff and Class Members have and may also incur out-of-pocket costs, e.g., for purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

22.    As a direct and proximate result of the Data Breach, Plaintiff and Class Members have suffered and will continue to suffer damages and economic losses in the form of: the loss of time needed to: take appropriate measures to avoid unauthorized and fraudulent charges; change their usernames and passwords on their accounts; investigate, correct and resolve unauthorized debits, charges, and fees charged against their accounts; and deal with spam messages and e-mails received as a result of the Data Breach. Plaintiff and Class Members have likewise suffered and will continue to suffer an invasion of their property interest in their

CLASS ACTION COMPLAINT

own PII such that they are entitled to damages for unauthorized access to and misuse of their PII from Defendants. Furthermore, Plaintiff and Class Members presently and will continue to suffer from damages associated with the unauthorized use and misuse of their PII as thieves will continue to use the stolen information to obtain money and credit in their name for several years.

23. Plaintiff seeks to remedy these harms on behalf of himself and all similarly situated individuals whose PII was accessed and/or removed from the network during the Data Breach.

24. Plaintiff seeks remedies including, but not limited to, compensatory damages, reimbursement of out-of-pocket costs, and injunctive relief including improvements to Defendants' data security systems, future annual audits, and adequate credit monitoring and identity restoration services funded by Defendants.

25. Accordingly, Plaintiff brings this action against Defendants seeking to redress their unlawful conduct.

## SUBSTANTIVE ALLEGATIONS

### Defendants' Background

26. Defendants own and operate websites that sell discount sporting goods across the country.

27. During the relevant time, Defendants operated across the United States through their websites.

28. In the ordinary course of doing business with Defendants, customers, like Plaintiff, and prospective customers are required to provide Defendants with sensitive PII such as:

    a.    Name;

    b.    billing address;

    c.    shipping address;

    d.    email address;

    e.    name on the payment card;

6

f.      type of payment card;

g.      full payment card number;

h.      payment card expiration date; and

i.      security code or CVV code (card verification number).

29.     As a condition of transacting with Defendants, Plaintiff and Class Members were required to disclose some or all of the PII listed above.

30.     Plaintiff used one of Defendants' websites on or about April 30, 2021 to purchase running shoe insoles using his credit card. On December 23, 2021, he received an email from Defendants entitled "Notice of data security incident," indicating his PII was exposed by Defendants, including "payment card information, including your name, address, payment card number [], expiration date, and payment card security code." This is the same credit he used to purchase the running shoe insoles.

31.     On information and belief, in the course of collecting PII from consumers, including Plaintiff, Defendants promised to provide confidentiality and adequate security for customer data through their applicable privacy policy and through other disclosures.

***The Data Breach***

32.     Starting on or about December 16, 2021, Defendants sent customers via email and mail a "Notice of Data Breach." The notice informed affected customers that:

***What Happened?***

On October 15, 2021 [Defendants] became aware of a potential data security incident . . . On November 6, 2021, the investigation determined that payment card information was obtained without authorization on October 1, 2021. On November 29, 2021, the investigation determined that your payment card information may have been affected during the incident.

7

CLASS ACTION COMPLAINT

***What Information was Involved?***

The incident may have involved payment card information, including your name, address, payment card number, expiration date, and payment card security code.[1]

33.    Defendants' notice to the state Attorneys General also provided this same information.[2]

34.    Defendant failed to use encryption to protect sensitive information transmitted online, and unauthorized individuals accessed Defendants' customers' unencrypted, unredacted information, including name, address, email address, and payment card information, which includes payment card number, CVV code, expiration date, and possibly more.[3]

35.    In a debit or credit card purchase transaction, card data must flow through multiple systems and parties to be processed. Generally, the cardholder presents a credit or debit card to an e-commerce retailer (through an e-commerce website) to pay for merchandise. The card is then "swiped" and information about the card and the purchase is stored in the retailer's computers and then transmitted to the acquirer or processor (i.e., the retailer's bank). The acquirer relays the transaction information to the payment card company, who then sends the information to the issuer (i.e., cardholder's bank). The issuer then notifies the payment card company of its decision to authorize or reject the transaction.

36.    There are two points in the payment process where sensitive

---

[1]    https://apps.web.maine.gov/online/aeviewer/ME/40/5646791e-9065-46de-8721-6e5536f24853/bb36a1a3-b5e3-47b2-b2b4-c9e3e70a59c2/document.html (last visited Dec. 28, 2021).

[2]    https://oag.ca.gov/ecrime/databreach/reports/sb24-548688 (last visited Dec. 28, 2021).

[3]    *Id.* It is clear that the information exposed in the Data Breach was unencrypted: California law requires companies to notify California residents "whose **unencrypted** personal information was, or is reasonably believed to have been, acquired by an unauthorized person" due to a "breach of the security of the system[.]" Cal. Civ. Code § 1798.82(a)(1) (emphasis added). Defendants notified the California Attorney General of the Data Breach on Dec. 18, 2021, evidencing that the exposed data was unencrypted.

8

CLASS ACTION COMPLAINT

cardholder data is at risk of being exposed or stolen: pre-authorization when the merchant has captured a consumer's data and it is waiting to be sent to the acquirer; and post-authorization when cardholder data has been sent back to the merchant with the authorization response from the acquirer, and it is placed into some form of storage in the merchant's servers.

37.    Encryption mitigates security weaknesses that exist when cardholder data has been stored, but not yet authorized, by using algorithmic schemes to transform plain text information into a non-readable format called "ciphertext." By scrambling the payment card data the moment it is "swiped," hackers who steal the data are left with useless, unreadable text in the place of payment card numbers accompanying the cardholder's personal information stored in the retailer's computers.

38.    The financial fraud suffered by Plaintiff and other customers demonstrates that Defendants chose not to invest in the technology to encrypt payment card data at point-of-sale to make its customers' data more secure; failed to install updates, patches, and malware protection or to install them in a timely manner to protect against a data security breach; and/or failed to provide sufficient control employee credentials and access to computer systems to prevent a security breach and/or theft of payment card data.

39.    Theft of PII is gravely serious. PII is a valuable property right. Its value is axiomatic, considering the value of Big Data in corporate America and the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that PII has considerable market value.

40.    Moreover, there may be a time lag between when harm occurs versus when it is discovered, and also between when personal information or payment card data is stolen and when it is used. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

CLASS ACTION COMPLAINT

41.     [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[4]

42.     PII and financial information are such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for years.

43.     There is a strong probability that entire batches of stolen payment card information have been dumped on the black market or are yet to be dumped on the black market, meaning Plaintiff and Class Members are at an increased risk of fraud for many years into the future. Thus, Plaintiff and Class Members must vigilantly monitor their financial accounts for many years to come.

44.     Plaintiff and members of the classes defined below have or will suffer actual injury as a direct result of Defendants' Data Breach. In addition to fraudulent charges and damage to their credit, many victims spent substantial time and expense relating to:

- Finding fraudulent charges;
- Canceling and reissuing cards;
- Purchasing credit monitoring and identity theft prevention;
- Addressing their inability to withdraw funds linked to compromised accounts;
- Removing withdrawal and purchase limits on compromised accounts;
- Taking trips to banks and waiting in line to obtain funds held in limited accounts;

---

[4]     "Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown" by GAO, June 2007, at: https://www.gao.gov/assets/270/262904.html (last accessed May 24, 2021).

CLASS ACTION COMPLAINT

- Spending time on the phone with or at the financial institution to dispute fraudulent charges;

- Resetting automatic billing instructions; and/or

- Paying late fees and declined payment fees imposed as a result of failed automatic payments.

45.   Plaintiff and Class Members have been damaged by the compromise of their PII in the Data Breach.

46.   Plaintiff's PII was compromised as a direct and proximate result of the Data Breach, and subsequently used for fraudulent transactions.

47.   As a direct and proximate result of the Data Breach, Plaintiff's PII was "skimmed" and exfiltrated and is in the hands of identity thieves and criminals, as evidenced by the fraud perpetrated against Plaintiff described above.

48.   As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have suffered actual fraud.

49.   As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have been placed at an imminent, immediate, and continuing increased risk of harm from fraud. Plaintiff and Class Members now must take the time and effort to mitigate the actual and potential impact of the Data Breach on their everyday lives, including placing "freezes" and "alerts" with credit reporting agencies, contacting her financial institutions, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

50.   Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

51.   Plaintiff and Class Members also suffered a loss of value of their PII when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases.

11

52.     Plaintiff and Class Members were also damaged via benefit-of-the-bargain damages. The implied contractual bargain entered into between Plaintiff and Defendants included Defendants' contractual obligation to provide adequate data security, which Defendant failed to provide. Thus, Plaintiff and the Class Members did not get what they paid for.

53.     Plaintiff and Class Members have spent and will continue to spend significant amounts of time to monitor their financial accounts and records for misuse.

54.     Plaintiff and the Class have suffered, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including:

a.     Trespass, damage to and theft of their personal property including personal information and payment card data;

b.     Improper disclosure of their personal information and payment card data;

c.     The imminent and certainly impending injury flowing from potential fraud and identity theft posed by customers' personal information and payment card data being placed in the hands of criminals and having been already misused via the sale of such information on the Internet black market;

d.     Damages flowing from Defendants' untimely and inadequate notification of the data breach;

e.     Loss of privacy suffered as a result of the Data Breach;

f.     Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach;

g.     Ascertainable losses in the form of deprivation of the value of customers' personal information for which there is a well-established and quantifiable national and international market; and

CLASS ACTION COMPLAINT

h.     The loss of use of and access to their account funds and costs associated with inability to obtain money from their accounts or being limited in the amount of money customers were permitted to obtain from their accounts.

55.     The substantial delay in providing notice of the Data Breach deprived Plaintiff and the Class Members of the ability to promptly mitigate potential adverse consequences resulting from the Data Breach. As a result of Defendants' delay in detecting and notifying consumers of the Data Breach, the risk of fraud for Plaintiff and Class Members was and has been driven even higher.

**Plaintiff's Experience**

56.     Plaintiff John Patrick placed an order for running shoe insoles on or about April 30, 2021 on one of Defendants' websites. He checked out using his credit card. On the payment platform, Plaintiff entered his PII: name, billing address, delivery address, payment card type and full number, CVV security code, payment card expiration date, and email address. During this transaction, Plaintiff does not recall if he was asked to "agree" to any "Terms of Service" or to review the "Privacy Policy."

57.     On or about October 26, 2021, unauthorized charges were attempted on Plaintiff's credit card. Plaintiff's credit card issuer contacted him regarding the fraud, then changed the account number in response and mailed Plaintiff a new card. In response to the fraudulent activity and the Data Breach notice, Plaintiff had to take time out of his day to deal with ramifications, including contact from the credit card issuer, calls to IDX and Defendant to attempt to receive complimentary credit monitoring, which he was denied, and researching and signing up for credit monitoring services. This was time he otherwise would have spent performing other activities, such as his job and/or leisure activities for the enjoyment of life.

58.     Plaintiff purchased credit monitoring services on December 27, 2021, in response to the Data Breach.

CLASS ACTION COMPLAINT

59.     Knowing that a hacker stole his PII, and that his PII may be available for sale on the dark web, has caused Plaintiff great concern. He is now very concerned about credit card theft and identity theft in general. This breach has given Plaintiff hesitation about using Defendants' online services, and reservations about shopping on other online websites.

60.     Now, due to Defendants' misconduct and the resulting Data Breach, hackers obtained his PII at no compensation to Plaintiff whatsoever. That is money lost for him, and money gained for the hackers–who could sell his PII on the dark web.

61.     Plaintiff also suffered actual injury and damages in paying money to, and purchasing products from, Defendants' website during the Data Breach, expenditures which he would not have made had Defendant disclosed that it lacked computer systems and data security practices adequate to safeguard customers' PII from theft.

62.     Moreover, Plaintiff suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII being placed in the hands of criminals.

63.     Plaintiff has a continuing interest in ensuring his PII, which remains in Defendants' possession, is protected and safeguarded from future breaches.

***Plaintiff's Efforts to Secure PII***

64.     Defendants' Data Breach caused Plaintiff harm.

65.     Prior to the activity described above during the period in which the Data Breach occurred, the credit card that Plaintiff used to purchase products on Defendants' website had never been stolen or compromised. Plaintiff regularly reviewed his credit accounts and other financial statements routinely and to his knowledge this card had not been compromised in any manner.

66.     Additionally, Plaintiff never knowingly transmitted unencrypted PII over the internet or any other unsecured source.

CLASS ACTION COMPLAINT

67.     Plaintiff stores any and all electronic documents containing his PII in a safe and secure location, and shreds any documents he receives in the mail that contain any of his PII, or that may contain any information that could otherwise be used to compromise his credit card.

## CLASS ACTION ALLEGATIONS

68.     Plaintiff brings this nationwide class action pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, on behalf of themselves and on behalf of all members of the following class:

> All individuals whose PII was compromised in the data breach announced by Defendants on or about December 16, 2021 (the "Class").

69.     Plaintiff also seeks certification of a Pennsylvania sub-class defined as follows:

> All individuals residing in the State of Pennsylvania whose PII was compromised in the data breach announced by Defendants on or about December 16, 2021 (the "Pennsylvania Subclass")

70.     Collectively the Class and the Pennsylvania Subclass are referred to as the "Classes."

71.     Excluded from the Classes are the following individuals and/or entities: Defendants and its parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Defendants have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

72.     Plaintiff reserves the right to modify or amend the definitions of the

CLASS ACTION COMPLAINT

1    proposed Classes before the Court determines whether certification is appropriate.

2        73.    **Numerosity**: The Classes are so numerous that joinder of all members

3    is impracticable. Defendants have identified 1,813,224 customers whose PII may

4    have been improperly accessed in the data breach, and the Classes are apparently

5    identifiable within Defendants' records.

6        74.    **Commonality**: Questions of law and fact common to the Classes exist

7    and predominate over any questions affecting only individual Class Members. These

8    include:

9        i.     When Defendants actually learned of the data breach and whether the

10   response was adequate;

11       j.     Whether Defendants owed a duty to the Classes to exercise due care in

12   collecting, storing, safeguarding and/or obtaining their PII;

13       k.     Whether Defendants breached that duty;

14       l.     Whether Defendants implemented and maintained reasonable security

15   procedures and practices appropriate to the nature of storing Plaintiff's and Class

16   Members' PII;

17       m.     Whether Defendants acted negligently in connection with the

18   monitoring and/or protection of Plaintiff's and Class Members' PII;

19       n.     Whether Defendants knew or should have known that it did not

20   employ reasonable measures to keep Plaintiff's and Class Members' PII secure and

21   prevent loss or misuse of that PII;

22       o.     Whether Defendants adequately addressed and fixed the

23   vulnerabilities which permitted the Data Breach to occur;

24       p.     Whether Defendants caused Plaintiff's and Class Members' damages;

25       q.     Whether Defendants violated the law by failing to promptly notify

26   Class Members that their PII had been compromised;

27       r.     Whether Plaintiff and the other Class Members are entitled to credit

28   monitoring and other monetary relief;

CLASS ACTION COMPLAINT

75.     **Typicality**: Plaintiff's claims are typical of those of other Class Members because all had their PII compromised as a result of the Data Breach, due to Defendants' misfeasance.

76.     **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Class Members. Plaintiff's counsel are competent and experienced in litigating privacy-related class actions.

77.     **Superiority and Manageability**: Under Rule 23(b)(3), a class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Classes is impracticable. Individual damages for any individual Class Members are likely to be insufficient to justify the cost of individual litigation, so that in the absence of class treatment, Defendants' misconduct would go unpunished. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims. There will be no difficulty in the management of this action as a class action.

78.     Class certification is also appropriate under Fed. R. Civ. P. 23(a) and (b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Classes as a whole.

79.     Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a.     Whether Defendants owed a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

b.     Whether Defendants breached a legal duty to Plaintiff and the Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

CLASS ACTION COMPLAINT

c.      Whether Defendants failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

d.      Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach; and

e.      Whether Class Members are entitled to actual damages, credit monitoring and/or other injunctive relief as a result of Defendants' wrongful conduct.

## FIRST CLAIM FOR RELIEF

### Negligence

### (On Behalf of Plaintiff and the Class or,

### in the alternative, the Pennsylvania Subclass)

80.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 79.

81.     Plaintiff brings this cause of action on behalf of himself and the Class or, alternatively, the Pennsylvania Subclass (the "Class" as used in this Count).

82.     Defendants owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, using, and protecting their PII from unauthorized third parties.

83.     The legal duties owed by Defendants to Plaintiff and Class Members include, but are not limited to the following:

a.      To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII of Plaintiff and Class Members in their possession;

b.      To protect PII of Plaintiff and Class Members in their possession using reasonable and adequate security procedures that are compliant with industry-standard practices; and

c.      To implement processes to quickly detect a data breach and to timely

18

CLASS ACTION COMPLAINT

act on warnings about data breaches, including promptly notifying Plaintiff and Class Members of the Data Breach.

84.     Defendants' duty to use reasonable data security measures also arose under Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a)(1), which prohibits "unfair . . . practices in or affecting commerce," including, as interested and enforced by the FTC, the unfair practices of failing to use reasonable measures to protect PII by companies such as Defendants.

85.     Various FTC publications and data security breach orders further form the basis of Defendants' duty. Plaintiff and Class Members are consumers under the FTC Act. Defendants violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with industry standards.

86.     Defendants breached their duties to Plaintiff and Class Members. Defendants knew or should have known the risks of collecting and storing PII and the importance of maintaining secure systems.

87.     Defendants knew or should have known that their security practices did not adequately safeguard Plaintiff's and the other Class Members' PII, including, but not limited to, the failure to detect the data breach the moment it happened.

88.     Through Defendants' acts and omissions described in this Complaint, including Defendants' failure to provide adequate security and their failure to protect the PII of Plaintiff and the Class from being foreseeably captured, accessed, exfiltrated, stolen, disclosed, accessed, and misused, Defendants unlawfully breached their duty to use reasonable care to adequately protect and secure Plaintiff's and Class Members' PII during the period when it was within Defendants' possession and control.

89.     Defendants breached the duties they owed to Plaintiff and Class Members in several ways, including:

a.      Failing to implement adequate security systems, protocols, and

19

practices sufficient to protect customers' PII and thereby creating a foreseeable risk of harm;

b.      Failing to comply with the minimum industry data security standards during the period of the data breach (e.g., There is no indication that Defendants' e-commerce platform is PCI DSS compliant and encrypts customers' order information, such as name, address, and credit card number, during data transmission, which did not occur here);

c.      Failing to act despite knowing or having reason to know that Defendants' systems were vulnerable to a data breach (e.g., Defendants did not detect the Data Breach for almost two weeks); and

d.      Failing to timely and accurately disclose to customers that their PII had been improperly acquired or accessed and was potentially available for sale to criminals on the dark web (e.g., More than two months went by before Defendants notified customers of the Data Breach).

90.      Due to Defendants' conduct, Plaintiff and Class Members are entitled to credit monitoring. Ongoing credit monitoring is reasonable here. The PII taken can be used towards identity theft and other types of financial fraud against the Class Members. Hackers not only stole many of Defendants' customers' names from the website, they also stole customers' billing and shipping addresses, payment card numbers, CVV codes, and payment card expiration dates. They got everything they need to illegally use Defendants' customers' credit cards to make illegal purchases. There is no question that this PII was taken by sophisticated cybercriminals, increasing the risks to the Class Members. The consequences of identity theft are serious and long-lasting. There is a benefit to early detection and monitoring.

91.      Some experts recommend that data breach victims obtain credit monitoring services for at least ten years following a data breach. Annual subscriptions for credit monitoring plans range from approximately $219 to $358

CLASS ACTION COMPLAINT

1    per year.

2    92.    As a result of Defendants' negligence, Plaintiff and Class Members

3    suffered injuries that include: (i) the lost or diminished value of PII; (ii) out-of-

4    pocket expenses associated with the prevention, detection, and recovery from

5    identity theft, tax fraud, and/or unauthorized use of their PII; (iii) lost opportunity

6    costs associated with attempting to mitigate the actual consequences of the data

7    breach, including but not limited to time spent deleting phishing email messages

8    and cancelling credit cards believed to be associated with the compromised

9    account; (iv) the continued risk to their PII, which may remain for sale on the dark

10   web and is in Defendants' possession, subject to further unauthorized disclosures

11   so long as Defendant fail to undertake appropriate and adequate measures to

12   protect the PII of customers and former customers in their continued possession;

13   and (v) future costs in terms of time, effort, and money that will be expended to

14   prevent, monitor, detect, contest, and repair the impact of the PII compromised as a

15   result of the data breach for the remainder of the lives of Plaintiff and Class

16   Members, including ongoing credit monitoring.

17   93.    These injuries were reasonably foreseeable given the history of

18   security breaches of this nature. The injury and harm that Plaintiff and the other

19   Class Members suffered was the direct and proximate result of Defendants'

20   negligent conduct.

21                          **SECOND CLAIM FOR RELIEF**

22                           **Breach of Implied Contract**

23                     **(On Behalf of Plaintiff and the Class or,**

24              **in the alternative, the Pennsylvania Subclass)**

25   94.    Plaintiff re-alleges and incorporates by reference the allegations

26   contained in paragraphs 1 through 79.

27   95.    When Plaintiff and the members of the Class or, alternatively, the

28   Pennsylvania Subclass (the "Class" as used in this Count), provided their personal

                                      21

1  information to Defendants in making purchases on their website, they entered into
2  implied contracts by which Defendants agreed to protect their personal information
3  and timely notify them in the event of a data breach.

4        96.    Defendants invited its customers, including Plaintiff and the Class, to
5  make purchases on its website using payment cards in order to increase sales by
6  making purchases more convenient.

7        97.    An implicit part of the offer was that Defendants would safeguard the
8  personal information using reasonable or industry-standard means and would
9  timely notify Plaintiff and the Class in the event of a data breach.

10        98.    Defendants also affirmatively represented in their Privacy Policy that
11  they protected the PII of Plaintiff and the Class in several ways, as described
12  above.

13        99.    Based on the implicit understanding and also on Defendants'
14  representations, Plaintiff and the Class accepted the offers and provided
15  Defendants with their personal information by using their payment cards in
16  connection with purchases on the Defendants' website during the period of the
17  Data Breach.

18        100.   Defendants manifested their intent to enter into an implied contract
19  that included a contractual obligation to reasonably protect Plaintiff's and the
20  Class' PII through, among other things, their Privacy Notice.

21        101.   In entering into such implied contracts, Plaintiff and Class Members
22  reasonably believed and expected that Defendants' data security practices
23  complied with relevant laws and regulations and were consistent with industry
24  standards.

25        102.   Plaintiff and Class Members would not have provided their personal
26  information to Defendants had they known that Defendants would not safeguard
27  their personal information as promised or provide timely notice of a data breach.

28        103.   Plaintiff and Class Members fully performed their obligations under

CLASS ACTION COMPLAINT

1    the implied contracts with Defendants.

2        104.   Defendants breached the implied contracts by failing to safeguard

3    Plaintiff's and Class Members' personal information and failing to provide them

4    with timely and accurate notice when their personal information was compromised

5    in the data breach.

6        105.   The losses and damages Plaintiff and Class Members sustained (as

7    described above) were the direct and proximate result of Defendants' breaches of

8    their implied contracts with them.

9                          **THIRD CLAIM FOR RELIEF**

10                             **QUASICONTRACT**

11                  **(On Behalf of Plaintiff and the Class or,**

12            **in the alternative, the Pennsylvania Subclass)**

13       106.   Plaintiff re-alleges and incorporates by reference the allegations

14   contained in paragraphs 1 through 79.

15       107.   This count is pleaded in the alternative to Count II above.

16       108.   Plaintiff and members of the Class or, alternatively, the members of

17   the Pennsylvania Subclass (the "Class" as used in this Count, conferred a monetary

18   benefit on Defendants. Specifically, they made purchases from Defendants and

19   provided Defendants with their personal information by using their payment cards

20   for the purchases that they would not have made if they had known that

21   Defendants did not provide adequate protection of their personal information.

22       109.   Defendants knew that Plaintiff and the Class conferred a benefit on

23   Defendants. Defendants profited from the purchases by Plaintiff and the Class and

24   Defendants used the PII of Plaintiff and the Class for Defendants' own business

25   purposes.

26       110.   Defendants failed to secure Plaintiff's and Class Members' PII, and

27   therefore Defendants were unjustly enriched by the purchases Plaintiff and the

28   Class would not have made had they known that Defendants did not keep their PII

CLASS ACTION COMPLAINT

1   secure.

2       111.   Plaintiff and the Class have no adequate remedy at law.

3       112.   Under the circumstances, it would be unjust for Defendants to be

4   permitted to retain any of the benefits that Plaintiff and Class Members conferred

5   on it.

6       113.   Defendants should be compelled to disgorge into a common fund or

7   constructive trust for the benefit of Plaintiff and Class Members proceeds that it

8   unjustly received from them. In the alternative, Defendants should be compelled to

9   refund the amounts that Plaintiff and the Class overpaid.

10                          **PRAYER FOR RELIEF**

11       WHEREFORE, Plaintiff, individually and on behalf of all of the members of

12   the Class, respectfully requests that the Court enter judgment in their favor and

13   against Defendants as follows:

14       A.   For an Order certifying the Class as defined herein and appointing

15   Plaintiff and his Counsel to represent the Class;

16       B.   For equitable relief enjoining Defendants from engaging in the

17   wrongful conduct complained of herein pertaining to the misuse and/or disclosure

18   of Plaintiff's and Class Members' PII;

19       C.   For injunctive relief requested by Plaintiff, including but not limited

20   to, injunctive and other equitable relief as is necessary to protect the interests of

21   Plaintiff and Class Members, including but not limited to an order:

22           i.   prohibiting Defendants from engaging in the wrongful and

23       unlawful acts described herein;

24           ii.   requiring Defendants to protect, including through encryption,

25       all data collected through the course of its business in accordance with all

26       applicable regulations, industry standards, and federal, state or local laws;

27           iii.   requiring Defendants to delete, destroy, and purge the personal

28       identifying information of Plaintiff and Class Members unless Defendants

24

CLASS ACTION COMPLAINT

can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

iv.     requiring Defendants to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the personal identifying information of Plaintiff and Class Members' PII;

v.      prohibiting Defendants from maintaining Plaintiff's and Class Members' PII on a cloud-based database;

vi.     requiring Defendants to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

vii.    requiring Defendants to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii.   requiring Defendants to audit, test, and train its security personnel regarding any new or modified procedures;

ix.     requiring Defendants to segment data by, among other things, creating firewalls and access controls so that if one area of Defendants' network is compromised, hackers cannot gain access to other portions of Defendants' systems;

x.      requiring Defendants to conduct regular database scanning and securing checks;

xi.     requiring Defendants to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate

25

based upon the employees' respective responsibilities with handling PII, as well as protecting the personal identifying information of Plaintiff and Class Members;

xii.      requiring Defendants to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiii.     requiring Defendants to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendants' policies, programs, and systems for protecting PII;

xiv.      requiring Defendants to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendants' information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xv.       requiring Defendants to meaningfully educate all class members about the threats that they face as a result of the loss of their confidential PII to third parties, as well as the steps affected individuals must take to protect themselves;

xvi.      requiring Defendants to implement logging and monitoring programs sufficient to track traffic to and from Defendants' servers; and

xvii.     for a period of 10 years, appointing a qualified and independent third party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendants' compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final

CLASS ACTION COMPLAINT

judgment;

D.  For restitution and disgorgement of the revenues wrongfully obtained as a result of Defendants' wrongful conduct;

E.  For an award of actual damages and compensatory damages, in an amount to be determined at trial;

F.  For an award of costs of suit, litigation expenses and attorneys' fees, as allowable by law; and

G.  For such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself and all others similarly situated, hereby demands a jury trial for all claims so triable.

Dated: December 29, 2021

/s/ *S. Martin Keleti*
Christopher L. Rudd (SBN 130713)
E-mail: clrudd@ruddlawla.com
S. Martin Keleti (SBN 144208)
E-mail: s.martin.keleti@gmail.com
**THE RUDD LAW FIRM**
4650 Sepulveda Boulevard, Suite 205
Sherman Oaks, CA 91403
Telephone: (310) 633-0705

Danielle L. Perry (SBN 292120)
E-mail: dperry@masonllp.com
**MASON LIETZ & KLINGER LLP**
5101 Wisconsin Avenue NW, Suite 305
Washington, DC 20016
Telephone: (202) 429-2290
Facsimile: (202) 429-2294

Gary M. Klinger*
E-mail: gklinger@masonllp.com
**MASON LIETZ & KLINGER LLP**
227 West Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (202) 429-2290

Jean S. Martin*
E-mail: jeanmartin@forthepeople.com
Francesca Kester*
E-mail: fkester@forthepeople.com
**MORGAN & MORGAN**

27

**COMPLEX LITIGATION GROUP**
201 North Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 559-4908

*Counsel for Plaintiff and the Putative Class*

*\* Pro Hac Vice Admission To Be Submitted*

CLASS ACTION COMPLAINT