**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOHN PATRICK, individually and on behalf of all others similarly situated, | No. 22-56078 |
| *Plaintiff-Appellant*, | D.C. No. 2:21-cv-09978-ODW-JEM |
| v. | |
| RUNNING WAREHOUSE, LLC, a California limited liability company; WILDERNESS SPORTS WAREHOUSE, LLC, DBA Tackle Warehouse, a California limited liability company; SPORTS WAREHOUSE, INC., DBA Tennis Warehouse, a California corporation, | OPINION |
| *Defendants-Appellees*, | |
| and | |
| SKATE WAREHOUSE, LLC, a California limited liability company, | |
| *Defendant*. | |

BETHANY BUFFINGTON, individually and on behalf of all others similary situated,

         *Plaintiff-Appellant*,

  v.

RUNNING WAREHOUSE, LLC, a California limited liability company; WILDERNESS SPORTS WAREHOUSE, LLC, DBA Tackle Warehouse, a California limited liability company; SPORTS WAREHOUSE, INC., DBA Tennis Warehouse, a California corporation,

         *Defendants-Appellees*,

  and

SKATE WAREHOUSE, LLC, a California limited liability company,

         *Defendant*.

No. 22-56080

D.C. No.
2:21-cv-09980-
ODW-JEM

| | |
|---|---|
| CRAIG ARCILLA, individually and on behalf of all others similarly situated, | No. 22-56081 |
| | D.C. No. 5:22-cv-00012-ODW-JEM |
| *Plaintiff-Appellant*, | |
| v. | |
| RUNNING WAREHOUSE, LLC, a California limited liability company; WILDERNESS SPORTS WAREHOUSE, LLC, DBA Tackle Warehouse, a California limited liability company; SPORTS WAREHOUSE, INC., DBA Tennis Warehouse, a California corporation, | |
| *Defendants-Appellees*, | |
| and | |
| SKATE WAREHOUSE, LLC, a California limited liability company, | |
| *Defendant*. | |

| | |
|---|---|
| LAURIE GASNICK, individually and on behalf of all others similarly | No. 22-56082 |

4          PATRICK V. RUNNING WAREHOUSE, LLC

situated,                                      D.C. No.
                                          2:22-cv-00101-
          *Plaintiff-Appellant*,                ODW-JEM

    v.

RUNNING WAREHOUSE, LLC, a
California limited liability company;
WILDERNESS SPORTS
WAREHOUSE, LLC, DBA Tackle
Warehouse, a California limited
liability company; SPORTS
WAREHOUSE, INC., DBA Tennis
Warehouse, a California corporation,

          *Defendants-Appellees*,

    and

SKATE WAREHOUSE, LLC, a
California limited liability company,

          *Defendant*.

ERIK SOLTER; LORNE BULLING,                No. 22-56086
individually and on behalf of all others
similarly situated,                             D.C. No.
                                          2:22-cv-00460-
          *Plaintiffs-Appellants*,              ODW-JEM

v.

RUNNING WAREHOUSE, LLC, a
California limited liability company;
WILDERNESS SPORTS
WAREHOUSE, LLC, DBA Tackle
Warehouse, a California limited
liability company; SPORTS
WAREHOUSE, INC., DBA Tennis
Warehouse, a California corporation,

        *Defendants-Appellees*,

and

SKATE WAREHOUSE, LLC, a
California limited liability company,

        *Defendant*.

---

TOM HARGROVE, individually and
on behalf of all others similarly
situated,

        *Plaintiff-Appellant*,

v.

No. 22-56087

D.C. No.
2:22-cv-01716-
ODW-JEM

RUNNING WAREHOUSE, LLC, a
California limited liability
company;
WILDERNESS SPORTS
WAREHOUSE, LLC, DBA Tackle
Warehouse, a California limited
liability company; SPORTS
WAREHOUSE, INC., DBA Tennis
Warehouse, a California corporation,

*Defendants-Appellees*,

and

SKATE WAREHOUSE, LLC, a
California limited liability company,

*Defendant*.

Appeal from the United States District Court
for the Central District of California
Otis D. Wright II, District Judge, Presiding

Submitted December 8, 2023[*]
Pasadena, California

Filed February 12, 2024

---

[*] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

Before:  CARLOS T. BEA, MILAN D. SMITH, JR., and
LAWRENCE VANDYKE, Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

## SUMMARY[**]

### Arbitration

The panel affirmed the district court's order granting Defendants' motions to compel arbitration and dismissing without prejudice Plaintiffs' six putative class actions asserting claims arising out of a data breach of Defendants' websites.

Plaintiffs purchased goods online from Defendants, and their personal information was stolen by hackers who breached Defendants' websites.

The panel held that Plaintiffs had sufficient notice of the arbitration provision.  The district court determined that all Plaintiffs other than Craig Arcilla acknowledged seeing a hyperlink to the websites' Terms of Use and therefore had inquiry notice of the arbitration provision.  Plaintiffs' failure to challenge this finding on appeal waived any assertion of error.  As for Arcilla, the panel agreed with the district court's finding that Defendant Running Warehouse's website provided sufficient information to put him on inquiry notice.  The website provided reasonably

---

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

conspicuous notice of the Terms, and Arcilla manifested assent to the Terms by clicking the "Place Order" button to complete his purchase.

The panel held that the arbitration provision was not invalid under *McGill v. Citibank, N.A.*, 393 P.3d 85 (Cal. 2017) (holding that under California law, a clause prohibiting a party from seeking public injunctive relief was invalid and unenforceable), because the arbitration provision did not bar the arbitrator from awarding public injunctive relief.

The panel held that the arbitration clause was not unconscionable under California law. The district court correctly found that the "mere presence" of a unilateral modification clause did not render the arbitration clause, a separate provision, substantively unconscionable.

Finally, the panel held that the parties agreed to delegate the threshold question of arbitrability by agreeing to an arbitration provision that incorporated JAMS arbitration rules.

## COUNSEL

Jean S. Martin (argued), Law Office of Jean Sutton Martin PLLC, Wilmington, North Carolina, for Plaintiffs-Appellants John Patrick, Bethany Buffington, Craig Arcilla, Laurie Gasnick, Erik Solter, and Tom Hargrove.

M. Anderson Berry, Clayeo C. Arnold A Professional Corporation, Sacramento, California; Terence R. Coates, Markovits Stock & DeMarco LLC, Cincinnati, Ohio; for Plaintiff-Appellant Bethany Buffington.

Tina Wolfson and Robert R. Ahdoot, Ahdoot & Wolfson PC, Burbank, California; Ben Barnow, Barnow and Associates PC, Chicago, Illinois; for Plaintiff-Appellant Craig Arcilla.

Kiley L. Grombacher and Marcus J. Bradley, Bradley/Grombacher LLP, Westlake Village, California; Joseph M. Lyon, The Lyon Firm LLC, Cincinnati, Ohio; for Plaintiff-Appellant Laurie Gasnick.

Timothy J. Peter, Faruqi & Faruqi LLP, Philadelphia, Pennsylvania; Lisa Omoto, Faruqi & Faruqi LLP, Los Angeles, California; for Plaintiff-Appellant Erik Solter.

MaryBeth V. Gibson, The Finley Firm PC, Atlanta, Georgia; for Plaintiff-Appellant Tom Hargrove.

P. Craig Cardon (argued), Jay T. Ramsey, Benjamin O. Aigboboh, and Alyssa Sones, Sheppard Mullin Richter & Hampton LLP, Los Angeles, California, for Defendants-Appellees.

---

## OPINION

M. SMITH, Circuit Judge:

Defendants-Appellees are companies that own and operate e-commerce websites selling sporting goods.[1] Plaintiffs-Appellants John Patrick, Bethany Buffington, Craig Arcilla, Laurie Gasnick, Erik Solter, Lorne Bulling,

---

[1] *See* www.tacklewarehouse.com ("Tackle Warehouse"); www.tenniswarehouse.com ("Tennis Warehouse"); www.runningwarehouse.com ("Running Warehouse"); www.skatewarehouse.com ("Skate Warehouse"); and www.racquetballwarehouse.com ("Racquetball Warehouse").

and Tom Hargrove (Plaintiffs) purchased goods online from
Defendants.[2]    In October 2021, hackers breached
Defendants' websites and stole their consumers' personally
identifiable information.    Based on this data breach,
Plaintiffs brought six putative class actions against
Defendants asserting claims of negligence, breach of
contract and of implied contract, and quasi contract.
Defendants moved to compel Plaintiffs to arbitrate their
claims against Defendants based on the arbitration provision
in the terms of use in their agreements.    The district court
granted the motions and dismissed the six related actions
without prejudice.    We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Because the parties do not dispute the district court's
recitation of the facts underlying this case, we recount that
recitation here.    During the checkout process, each
Defendant's website provides an option for consumers to
either proceed straight to checkout or to create an account.
When consumers choose to create an account during
checkout, they must check a box next to the words "Create
an Account."    On each website, the following statement
appears immediately adjacent to the account creation
checkbox: "[b]y creating an account, you agree to our
privacy policy and terms of use."    The phrase "terms of use"
is a hyperlink that leads to the respective Defendant's terms
of use (the Terms).    Gasnick and Hargrove created accounts
on    Running    Warehouse    and    Tackle    Warehouse,
respectively.

---

[2] The six appeals arise out of the same district court order and rest on
nearly identical briefs.    The appeal in a seventh action, *Pfeffer v.
Wilderness Sports Warehouse*, No. 22-cv-0097-ODW, was voluntarily
dismissed on March 1, 2023.

Regardless of whether a consumer chooses to create an account, he or she must confirm the order by clicking a final button to "Place Order" or "Submit Order." Immediately adjacent to this final button on each website is the following statement: "By submitting your order you . . . agree to our privacy policy and terms of use." Once again, the phrase "terms of use" is a hyperlink that leads to the respective Defendant's Terms. Arcilla, Buffington, Gasnick, and Patrick purchased goods from Running Warehouse; Bulling purchased goods from Tennis Warehouse; Solter purchased goods from Racquetball Warehouse; and Hargrove purchased goods from Tackle Warehouse.

Each website's "terms of use" hyperlink leads to substantially identical Terms. Each contains the same "Choice of Law, Arbitration, and Venue" provision, which provides, in relevant part:

> You agree to arbitrate any and all claims, including all statutory claims, and any state or federal claims. By agreeing to arbitration, you understand and agree that you are giving up any rights to litigate claims in a court or before a jury, or to participate in a class action or representative action with respect to a claim.

The arbitration provision states:

> Any claim, dispute or controversy (whether in contract, tort or otherwise, whether pre-existing, present or future, and including statutory, consumer protection, common law, intentional tort, injunctive and equitable

claims) between you and us arising from or relating in any way to your use or purchase of products or services through the website or services will be resolved exclusively and finally by binding arbitration.

All Claims shall be decided by one arbitrator pursuant to this provision and the commercial arbitration rules and procedures of JAMS, Inc. at their offices located in Orange County, California.

In October 2021, hackers breached Defendants' websites and stole their consumers' personally identifiable information (the Data Breach). Plaintiffs assert that, as part of the Data Breach, the hackers stole Plaintiffs' information they had provided to Defendants when purchasing goods online from Defendants. Based on the Data Breach, Plaintiffs brought six putative class actions against Defendants asserting claims of negligence, breach of contract and of implied contract, and quasi contract.

Defendants moved to compel Plaintiffs to arbitrate their claims against Defendants based on the arbitration provision in the Terms. Plaintiffs opposed. On October 18, 2022, the district court granted Defendants' motions to compel arbitration and dismissed Plaintiffs' individual and putative class claims in the six related actions without prejudice. The court concluded that (1) there was a valid contract, (2) the arbitration provision was not unconscionable, (3) the arbitration clause did not prohibit public injunctive relief, and (4) the Terms delegated the issue of arbitrability because they incorporated JAMS's rules. Plaintiffs timely appealed.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1291 and 9 U.S.C. § 16(a)(3). *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89 (2000); *Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1058 (9th Cir. 2020). "We review a district judge's order to compel arbitration *de novo*." *Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*, 816 F.3d 1208, 1211 (9th Cir. 2016). "We review factual findings for clear error, and the interpretation and meaning of contract provisions de novo." *Shivkov*, 974 F.3d at 1058.

## ANALYSIS

Plaintiffs argue that the district court erred in granting Defendants' motions to compel arbitration because (1) Plaintiffs had insufficient notice of the arbitration provision, (2) the arbitration provision was unconscionable, (3) the arbitration provision bars public injunctive relief and is therefore invalid pursuant to *McGill v. Citibank, N.A.*, 393 P.3d 85 (Cal. 2017), and (4) the arbitration provision does not clearly or unmistakably delegate the issue of arbitrability. We disagree.

## I. Plaintiffs Had Sufficient Notice of the Arbitration Provision.

Because our circuit's recent decision in *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022), is both relevant and instructive, we recount it here. "The Federal Arbitration Act (FAA) requires district courts to compel arbitration of claims covered by an enforceable arbitration agreement." *Berman*, 30 F.4th at 855; *see* 9 U.S.C. § 3. "The FAA limits the court's role to determining whether a valid arbitration agreement exists and, if so,

whether the agreement encompasses the dispute at issue."
*Berman*, 30 F.4th at 855 (internal quotation marks omitted).

"In determining whether the parties have agreed to
arbitrate a particular dispute, federal courts apply state-law
principles of contract formation." *Id.* "To form a contract
under . . . California law, the parties must manifest their
mutual assent to the terms of the agreement." *Id.* "Parties
traditionally manifest assent by written or spoken word, but
they can also do so through conduct." *Id.* "However, '[t]he
conduct of a party is not effective as a manifestation of his
assent unless he intends to engage in the conduct and knows
or has reason to know that the other party may infer from his
conduct that he assents.'" *Id.* (alteration in original) (quoting
Restatement (Second) of Contracts § 19(2) (1981)). "These
elemental principles of contract formation apply with equal
force to contracts formed online. Thus, if a website offers
contractual terms to those who use the site, and a user
engages in conduct that manifests her acceptance of those
terms, an enforceable agreement can be formed." *Id.* at 855–
56.

"To avoid the unfairness of enforcing contractual terms
that consumers never intended to accept, courts confronted
with online agreements . . . have devised rules to determine
whether meaningful assent has been given. Unless the
website operator can show that a consumer has actual
knowledge of the agreement, an enforceable contract will be
found based on an inquiry notice theory only if: (1) the
website provides reasonably conspicuous notice of the terms
to which the consumer will be bound; and (2) the consumer
takes some action, such as clicking a button or checking a
box, that unambiguously manifests his or her assent to those
terms." *Id.* at 856 (citing *Meyer v. Uber Techs., Inc.*, 868
F.3d 66, 75 (2d Cir. 2017); *Nguyen v. Barnes & Noble Inc.*,

763 F.3d 1171, 1173 (9th Cir. 2014)). "Reasonably
conspicuous notice of the existence of contract terms and
unambiguous manifestation of assent to those terms by
consumers are essential if electronic bargaining is to have
integrity and credibility." *Berman*, 30 F.4th at 856 (cleaned
up).

Here, the district court determined that all Plaintiffs other
than Arcilla "acknowledge[d] seeing a hyperlink to the
Terms" and therefore "had inquiry notice" of the arbitration
provision. In so finding, the court rejected Plaintiffs'
argument that "the existence of this hyperlink did not apprise
them of the existence of an arbitration agreement" and cited
as authority for its position the Second Circuit's decision in
*Meyer*, 868 F.3d at 79, which states that "[w]hile it may be
the case that many users will not bother reading the terms,
that is the choice the user makes; the user is still on inquiry
notice."

Plaintiffs do not challenge this finding on appeal. Their
failure to do so waives any assertion of error. *See Murphy v.
DirecTV, Inc.*, 724 F.3d 1218, 1225 n.4 (9th Cir. 2013) ("The
district court found that Plaintiffs received the Customer
Agreement containing the arbitration provision, and were
bound by the contract, even if they did not read
it. . . . Plaintiffs did not argue in their Opening Brief that
they did not 'assent to arbitration,' and therefore they have
waived this argument.").

As for Arcilla, the district court found that the Running
Warehouse website provided sufficient information to put
him on inquiry notice. We agree. First, the website provided
reasonably conspicuous notice of the Terms. *See Berman*,
30 F.4th at 856. Running Warehouse uses a "browsewrap
agreement[], in which a website offers terms that are

disclosed only through a hyperlink and the user supposedly manifests assent to those terms simply by continuing to use the website." *Id.* (internal quotation marks omitted). To be conspicuous, a browsewrap agreement "must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Id.*

Here, Running Warehouse includes explicit notice on the final order review page, directly below key information such as the purchase total, and directly below the button Arcilla tapped to complete his purchase. The notice is on an uncluttered page and is not hidden or obscured. The notice is clear and legible, and the hyperlinked phrase "terms of use" is colored bright green—contrasted against the surrounding white background and adjacent black text. Moreover, the "terms of use" hyperlink is the same color as other clickable links on the page, suggesting clearly that it is a hyperlink.

Relying principally on our decision in *Berman*, Plaintiffs argue that the hyperlinked terms of use do not provide sufficiently conspicuous notice. Their argument is unavailing. The website here is distinguishable from that reviewed in *Berman*: in *Berman*, the text disclosing the existence of the terms and conditions was "printed in a tiny gray font considerably smaller than the font used in the surrounding website elements, and indeed in a font so small that it is barely legible to the naked eye." *Id.* at 856–57. As previously explained, that is not the case here. That the links are not blue, underlined, or capitalized does not undercut the district court's conclusion that Running Warehouse provided Arcilla with "reasonably conspicuous notice" of the Terms. *See id.* at 856.

Second, Arcilla manifested assent to the Terms by clicking the "Place Order" button to complete his purchase. *See id.* at 857 ("A user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement."). Here, Running Warehouse indicates clearly that, by submitting an order, the consumer "confirms [he is] 18 years of age or older and agree[s] to our privacy policy and terms of use." Plaintiffs do not meaningfully challenge assent on appeal.

Accordingly, the district court did not err in finding that Plaintiffs had sufficient notice of the arbitration provision.

## II. The Arbitration Provision is Not Invalid Under *McGill*.

Under California law, a clause prohibiting a party from seeking public injunctive relief is invalid and unenforceable. *See McGill*, 393 P.3d at 87. As the Supreme Court of California has observed:

> [The *McGill* rule] is not a defense that applies only to arbitration or that derives its meaning from the fact that an agreement to arbitrate is at issue. . . . [A] provision in *any* contract— even a contract that has no arbitration provision—that purports to waive, *in all fora*, the statutory right to seek public injunctive relief under the [Unfair Competition Law], the [Consumers Legal Remedies Act], or the false advertising law is invalid and unenforceable under California law.

*Id.* at 94 (second emphasis added).

The district court properly found that *McGill* does not apply because the arbitration provision does not prohibit public injunctive relief in all fora. Contracts permitting public injunctive relief in some fora but not others do not violate *McGill*. *See Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 829 (9th Cir. 2019) ("The *McGill* rule leaves undisturbed an agreement that both requires bilateral arbitration and permits public injunctive claims.").

Here, the arbitration agreement does not bar the arbitrator from awarding public injunctive relief (nor does it address awardable remedies at all). The relevant clause reads: "All Claims shall be brought solely in the parties' individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding." As the district court noted, "[t]his language prohibits the consumer from arbitrating as part of a class or representative proceeding, but says nothing about the consumer's ability to pursue, or the arbitrator's ability to award, any certain type of relief."

Plaintiffs suggest that the "arbitration clause taken as a whole prevents [them] from obtaining public injunctive relief in arbitration." Plaintiffs cite, for example, the following two provisions: (1) "No arbitration award or decision will have any preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration," and (2) "All Claims shall be brought solely in the parties' individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding." But neither provision conflicts with *McGill*. The first merely provides that the arbitration award cannot be used by or against a non-party to establish an issue or claim in a separate and subsequent proceeding—i.e., the default rule in California. *See Vandenberg v. Sup. Ct.*, 982

P.2d 229, 240 (Cal. 1999) ("[A] private arbitration award . . . can have no collateral estoppel effect in favor of third persons unless the arbitral parties agreed . . . that such a consequence should apply."). The second does not bar the arbitrator from awarding public injunctive relief. Under California law, "[a] plaintiff requesting a public injunction files the lawsuit 'on his or her own behalf' and retains sole control over the suit." *Blair*, 928 F.3d at 829 (quoting *McGill*, 393 P.3d at 92). To implicate *McGill*, the arbitration provision must also "prohibit the arbitrator from awarding relief that would affect those other than [p]laintiff." *Maynez v. Walmart, Inc.*, 479 F. Supp. 3d 890, 899 (C.D. Cal. 2020). No such prohibition exists here.

Finally, Plaintiffs argue that "arbitration clauses containing these or substantially similar provisions violate the *McGill* rule," citing various district court decisions such as *Jialu Wu v. iTalk Glob. Commc'ns, Inc.*, No. CV 20-7150, 2020 WL 8461696, at *5 (C.D. Cal. Oct. 21, 2020) (invalidating arbitration provision stating "No arbitrator may award relief *outside the limits set herein*. . . . [*A*]*ll claims shall be in Customer's individual capacity* and that Customer will not commence or join any class or consolidating Customer's claim with the claims of any person or persons"). However, as the district court found, in each of the cited cases, "the arbitration clause contained an explicit term providing that the arbitrator could grant only individual relief." Again, no such provision exists here. The district court did not err by finding that the arbitration agreement is not invalid under *McGill*.

### III.   The Arbitration Clause was Not Unconscionable.

Plaintiffs next claim that the district court erred by not considering     both     substantive     and     procedural

unconscionability and ask that we remand the action for further proceedings to determine whether the Terms are procedurally unconscionable.

"The unconscionability of an arbitration agreement is a question of law that [courts] review de novo, applying general principles of California contract law to determine the agreement's enforceability." *Nunez v. Cycad Mgmt. LLC*, 291 Cal. Rptr. 3d 921, 926 (Cal. Ct. App. 2022) (quoting *Dougherty v. Roseville Heritage Partners*, 260 Cal. Rptr. 3d 580, 588 (Cal. Ct. App. 2020)). Section 2 of the FAA "permits arbitration agreements to be declared unenforceable 'upon such grounds as exist at law or in equity for the revocation of any contract.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting 9 U.S.C. § 2). "This saving clause permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability . . . ." *Id.* (internal quotation marks omitted); *see also Sonic-Calabasas A, Inc. v. Moreno*, 311 P.3d 184, 201 (Cal. 2013) ("[A]fter *Concepcion*, unconscionability remains a valid defense to a petition to compel arbitration.").

Under California law, a contract or contract clause that is both procedurally and substantively unconscionable is unenforceable. *Sanchez v. Valencia Holding Co.*, 353 P.3d 741, 748 (Cal. 2015). Substantive and procedural unconscionability "need not be present in the same degree. Essentially a sliding scale is invoked . . . . In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* (internal quotation marks omitted) (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 690 (Cal. 2000)). "Substantive unconscionability

addresses the fairness of the term in dispute." *Szetela v. Discover Bank*, 118 Cal. Rptr. 2d 862, 867 (Cal. Ct. App. 2002).

The district court correctly found that the "mere presence" of a unilateral modification clause[3] does not render the arbitration clause, *a separate provision*, substantively unconscionable. "Because § 2 of the FAA states that an agreement to arbitrate is 'valid, irrevocable, and enforceable,' and does not address 'the validity of the contract in which it is contained,' the United States Supreme Court has held that 'a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate.'" *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1032 (9th Cir. 2016) (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70–71 (2010)). "In other words, if the plaintiff does not specifically and directly challenge the precise agreement to arbitrate at issue, a court must treat the arbitration agreement as valid under § 2 and enforce it, thereby letting the arbitrator decide questions as to the validity of other provisions in the first instance." *Id.* (cleaned up). "This rule applies even

---

[3] The clause states:

> We reserve the right to change or modify the terms and conditions that govern your use of the Website, Services and this Agreement at any time as provided herein, with or without notice to you, at our discretion. You are responsible for ensuring we have an up-to-date active and deliverable email address for you, and for periodically visiting the Website to see the current Agreement in effect and any changes that may have been made to it. Your use of the Website and Services following any such change constitutes your agreement to follow and be bound by the terms and conditions as changed.

when the plaintiff challenges the contract on 'a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid.'" *Id.* (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006)). "Given this precedent, our authority to review portions of the contract outside the arbitration provision is limited." *Id.*

Here, Plaintiffs argue that "the unilateral modification clause, which gives . . . Defendants the 'unilateral right to amend terms with no notice to users[,] presents at least some substantive unconscionability.'" But as the district court explained, "the unilateral modification clause does not make the arbitration provision itself unconscionable." *Id.* at 1033. "California courts have held that the implied covenant of good faith and fair dealing prevents a party from exercising its rights under a unilateral modification clause in a way that would make it unconscionable." *Id.*

Plaintiffs read *Tompkins* more narrowly, suggesting that the court held only that the unilateral modification provision does not render an arbitration agreement per se unconscionable—i.e., leaving open the door that there is "at least some substantive unconscionability" by its mere presence in the contract. We disagree. In *Tompkins*, the district court concluded that "although the arbitration provision was procedurally unconscionable, it was not substantively unconscionable and therefore was enforceable under California law." *Id.* at 1021. Under Plaintiffs' reading of the case, the panel should have remanded the case back to the district court to apply the sliding-scale test (i.e., because there would exist both procedural and substantive unconscionability). Instead, we affirmed. *Id.* at 1033 ("We conclude that under principles established by recent

California Supreme Court decisions, California's common law rule of unconscionability does not provide a basis to revoke the arbitration agreement in the Terms of Service here."). Thus, *Tompkins* instructs that the presence of a unilateral modification provision, without more, does not render a separate arbitration clause at all substantively unconscionable. Accordingly, Plaintiffs' argument fails.

## IV. The Parties Agreed to Delegate the Threshold Question of Arbitrability.

While the general rule is that a district court decides whether a claim falls within the scope of an arbitration agreement, such questions "can be expressly delegated to the arbitrator where the [contracting] parties *clearly and unmistakably* provide otherwise." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (internal quotation marks omitted). When the parties do so, "a court may not override the contract" and has "no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).

Courts have found that parties clearly delegated arbitrability where they incorporated an arbitrator's arbitration rules in the agreement. For instance, "[v]irtually every circuit to have considered the issue has determined that incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013).

Here, the district court determined that, "[b]y agreeing to an arbitration provision that incorporates JAMS Rules, and particularly in light of the language of JAMS Rule 11(b), the Court finds that the parties clearly and unmistakably

delegated the question of arbitrability to JAMS." *See id.*
The Terms require arbitration "pursuant to . . . the
commercial arbitration rules and procedures of JAMS, Inc."
and direct consumers to "visit http://www.jamsaadr.com"
via a provided hyperlink for "more information on JAMS
and/or [its] rules." Rule 11(b) of JAMS requires in relevant
part that:

> [J]urisdictional and arbitrability disputes,
> including disputes over the formation,
> existence, validity, interpretation or scope of
> the agreement under which Arbitration is
> sought, and who are the proper parties to the
> Arbitration, shall be submitted to and ruled
> on by the Arbitrator. The Arbitrator has the
> authority to determine jurisdiction and
> arbitrability issues as a preliminary matter.

Although our circuit has not previously, in a published
opinion, extended *Brennan*'s rationale to the incorporation
of the JAMS rules, we agree with the district court and do so
here. *Accord Belnap v. Iasis Healthcare*, 844 F.3d 1272,
1279 (10th Cir. 2017) ("We conclude that by incorporating
the JAMS Rules into the Agreement, [the parties] evidenced
a clear and unmistakable intent to delegate questions of
arbitrability to an arbitrator."); *Cooper v. WestEnd Cap.
Mgmt., L.L.C.*, 832 F.3d 534, 546 (5th Cir. 2016); *Emilio v.
Sprint Spectrum L.P.*, 508 F. App'x 3, 5 (2d Cir. 2013)
(summary order). Incorporation of the JAMS arbitration
rules by reference constitutes clear and unmistakable
evidence that the parties agree to arbitrate arbitrability.

Plaintiffs argue that reference to the arbitrator's rules
does not mandate delegation of the issue of arbitrability

since they are unsophisticated parties.[4] *Brennan* involved an employment contract between two sophisticated parties. *See* 796 F.3d at 1130–31. Our circuit has not yet decided whether *Brennan*'s holding should extend to arbitration clauses in consumer contracts between a sophisticated entity and an average unsophisticated consumer. *See Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1252 (N.D. Cal. 2019) ("The issue of whether the sophistication of the contracting parties should be taken into account in evaluating whether a delegation to an arbitrator is clear and unmistakable is an open one in the Ninth Circuit."). However, as Defendants observe, Plaintiffs offered no evidence concerning their sophistication or lack thereof to the district court. Accordingly, we need not decide the issue in order to resolve this case.

## CONCLUSION

For the foregoing reasons, the district court's order granting Defendants' motions to compel arbitration and dismissing without prejudice Plaintiffs' individual and putative class claims in the related actions is **AFFIRMED**.

---

[4] In their reply briefs, Plaintiffs argue for the first time that even if the Terms' reference to JAMS was sufficient to delegate the issue of arbitrability, the delegation clause is nevertheless unenforceable because the Terms fail to comply with JAMS's own rules. Defendants move to strike this section of Plaintiffs' reply briefs on the grounds that it is entirely new argument based on non-record evidence. Plaintiffs' argument is waived, as Plaintiffs did not raise it before the district court or in their opening brief. *See Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1044 (9th Cir. 2012); *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999). Defendants' motions to strike are denied as moot.